IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 1:23-cr-149 (RDA) |
| ) | |
| ALHAJIE ALPHA KAMARA, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Alhajie Alpha Kamara's ("Defendant") First Motion to Suppress Evidence Seized from Search of Cellular Phone ("First Motion to Suppress") (Dkt. 50) and Second Motion to Suppress Evidence Seized from Search of Cellular Phone ("Second Motion to Suppress") (Dkt. 52). Considering the Motions together with the government's Oppositions (Dkt. Nos. 58; 59), the iPhone Search Warrant (Dkt. 55), and the argument heard and the evidence presented at the November 29, 2023 motions hearing, the Court DENIES Defendant's First Motion to Suppress (Dkt. 50) and DENIES Defendant's Second Motion to Suppress (Dkt. 52) for the reasons that follow.

I. BACKGROUND

A. Factual Background

In the early afternoon on March 26, 2023, gun shots were fired outside an apartment complex located at Kitty Hawk Way in Woodbridge, Virginia. Dkt. 50 at 1. A woman was struck by a bullet and suffered non-life-threatening injuries while inside her apartment. *Id.* at 1-2. Another occupied apartment was struck by two bullets. *Id.* at 2. Two individuals were reported leaving the scene, both of them wearing black clothing and face coverings and one of them holding a gun. *Id.* One of the individuals was also wearing a black puffer jacket and only

had one shoe on, with just a white sock on the other foot. *Id.* The individuals reportedly got into a white Mercedes sedan and drove off in it. *Id.*

Soon after, officers from the Prince William County Police Department ("PWCPD") were dispatched to Kitty Hawk Way due to reports of the shooting. *Id.* PWCPD Officer Gonzalo Gracia was responding to the shooting when he spotted a white Mercedes sedan at the intersection of Mary's Way and Richmond Highway. *Id.* Mary's Way is the primary road leading to and from the apartment complex. *Id.* Officer Gonzalo tried to initiate a traffic stop, which the driver of the white Mercedes ignored. *Id.*

The white Mercedes proceeded across Richmond Highway and Officer Gonzalo followed. *Id.* After a short chase, the white Mercedes stopped at the intersection of Bay Vista Drive and Cove Landing Drive and three men fled from the vehicle. *Id.* Officer Gonzalo chased the men. *Id.* He observed one of the fleeing suspects, soon after identified as Defendant, to be wearing a black head covering, black puffy jacket, black pants, and white socks without shoes. *Id.* Officer Gonzalo observed this suspect drop a firearm and remove and toss down his black jacket. *Id.* It was later determined that an iPhone was in the jacket. Officer Gonzalo stopped his pursuit to secure the jacket and firearm before continuing his chase. *Id.* Defendant claims that he did not know that his locked iPhone was inside his jacket pocket when he discarded the jacket. *Id.*

A few minutes later, Defendant was arrested by other law enforcement officers through the assistance of a citizen. *Id.* at 3. Defendant was wearing black pants and white socks without shoes. *Id.* Law enforcement identified Defendant as the same person who had dropped the jacket. *Id.* Defendant was subsequently charged with two counts of conspiracy to maliciously shoot into an occupied dwelling and obstruction of justice without force. *Id.*

On March 27, 2023, Defendant was arraigned in Prince William County General District Court. *Id.* Defendant retained counsel and was released on bond on April 5, 2023. *Id.* None of his seized property was returned to him upon his release, he received no inventory of items in law enforcement's possession, and he was not told that law enforcement had recovered his phone from the dropped jacket. *Id.*

When Officer Gracia initially collected the jacket from the ground where Defendant discarded it, he placed it on the trunk of the white Mercedes and engaged in a very brief pat down of the jacket to check for weapons and other dangerous objects but did not conduct a full search of the jacket. Dkt. 58 at 2. PWCPD officers are trained that when a significant case has, or will have, a detective and/or forensics team assigned (as this case did) the officers are to allow the forensics team to process evidence found at the scene of the incident. *Id.* at 2-3. Later that day, another officer took the jacket and brought it to Officer Luke Dean of the Forensic Science Section of PWCPD, who then placed the jacket into temporary storage. *Id.* at 3.

Officer Dean was the lead CSI officer in charge of processing evidence collected from the March 26, 2023 incident. *Id.* Officer Dean began this process on March 28, 2023 as he was working on other casework on March 27, 2023. *Id.* He began by processing the evidence inside the white Mercedes. *Id.* This lasted until April 3, 2023, at which point he took a week of previously scheduled leave. *Id.* He resumed his work on the case on April 13, 2023 by processing over 50 items recovered from the scene of the shooting and dusting the Mercedes for latent prints. *Id.*

On April 19, Officer Dean submitted the aforementioned items of evidence to the state lab. *Id.* At that point, he started to take supplemental photos of other items of evidence, including the black puffer jacket discarded at the scene of the pursuit. *Id.* That same day,

3

Officer Dean checked the puffer jacket out of temporary storage. *Id.* When examining the jacket and taking supplemental photos, Officer Dean discovered a black iPhone within one of the jacket pockets. *Id.* He also discovered inside of the jacket approximately 494 blue "M30" pills and approximately $560.00 in cash bundled into a roll. *Id.*

On April 19, Detective Joshua Walsh-Steines, the lead detective investigating the shooting at Kitty Hawk Way, became aware of the black iPhone found in the jacket. *Id.* Subsequently, on April 25, 2023, Detective Walsh-Steines sought and obtained a warrant to search the iPhone ("the iPhone Search Warrant"). Dkt. 50 at 4. Defendant's defense attorneys in Prince William County were not informed of the warrant for Defendant's phone until May 2023, when additional state charges were brought against Defendant, which is when Defendant claims that he learned for the first time that law enforcement had recovered his phone. *Id.*

The iPhone Search Warrant specified the item to be searched as "Black Apple iPhone cell phone, further identified as item 110 in Prince William County Police evidence under case number [case number]." Dkt. 55 (iPhone Search Warrant) at 1. The Warrant also specified that it was issued in relation to specific offenses that are described on the face of the warrant as "18.2-248 Possession with the Intent to Distribute Schedule I/II Drugs, 18.2-308.4 Possession of a firearm while in possession of certain substances, and 18.2-308 Possession of a concealed weapon, shooting into an occupied dwelling, in violation of section 18.2-279[] of the 1950 Code of Virginia, as amended." *Id.* The iPhone Search Warrant further included a reference to an Attachment that listed the items to be searched for and seized as:

> Data stored on the device to include the device serial number, user, contacts, user accounts, IP list records, applications, email, and cloud account username. Outgoing video or voice VoIP, data stored on the device from any items used in the sending or receiving of email/instant/other online communication methods. Images, data, text files and text messages relating to the crimes. Records relating

4

> to the user's activities in relation to the aforementioned crimes and stored on the device including pictures, videos, writings or correspondence, emails, chat sessions, internet history and search history.  Geo cache/location data and meta data relating to the aforementioned crimes.  All evidence, fruits and instrumentalities of the aforementioned crimes contained within the specified items and stored on the device.

*Id.* at 3.

### B. Procedural Background

On September 14, 2023, a grand jury empaneled in the Eastern District of Virginia returned an indictment charging Defendant with (1) possession with intent to distribute 40 grams or more of mixture containing fentanyl, in violation of 21 U.S.C. § 841(a)(1), and (2) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Dkt. 37 (Indictment).  Trial in the instant case is set for December 11, 2023.  On November 3, 2023, Defendant filed his two Motions to Suppress.  Dkt. Nos. 50; 52.  Thereafter, on November 17, 2023, the government filed Oppositions to Defendant's Motions.  Dkt. Nos. 58; 59.  On November 29, 2023, the Court heard oral argument on Defendant's Motions to Suppress.

## II. DEFENDANT'S FIRST MOTION TO SUPPRESS

In his First Motion to Suppress, Defendant argues that the government unreasonably delayed obtaining a search warrant for his phone after seizing it, in violation of the Fourth Amendment.  Dkt. 50 at 1.  The Court finds that, given the circumstances, the delay was not unreasonable and, in any event, exclusion is not an appropriate remedy here.

### A. Legal Standard

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  "A seizure that is 'lawful at its inception can

nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests.'" *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019) (quoting *United States v. Jacobsen*, 466 U.S. 109, 124 (1984)).  When assessing a defendant's claim of an unreasonable warrantless seizure, courts are to "balance the government's interest in the seizure against the individual's possessory interest in the object seized." *Id.* (citations omitted).  Regarding the government's interests, courts in the Fourth Circuit consider how "diligently [law enforcement officers] pursued their investigation." *United States v. Dorsey*, No. CR RDB-18-0347, 2019 WL 3804113, at *4 (D. Md. Aug. 13, 2019).  Courts also look at the interest the government has in the retention of a defendant's phone. *United States v. Skinner*, No. 3:19-cr-19, 2021 WL 1725543, at *24–25 (E.D. Va. Apr. 29, 2021).  Furthermore, a "delay" in securing a warrant can be justified by "overriding circumstances," *Pratt*, 915 F.3d at 272, such as law enforcement's need to "attend to other and higher law enforcement priorities." *United States v. Christie*, 717 F.3d 1156, 1164 (10th Cir. 2013).  These governmental interests are to be balanced against a defendant's possessory interest in the item seized.  A defendant "who has strongly resisted a search and seizure, and remains free from police custody, maintains an undiminished interest in the item that the Government has seized." *Dorsey*, 2019 WL 3804113, at *4.  By contrast, a defendant is unable to assert any possessory interest whatsoever in property that he has abandoned. *Id.* at *6 ("There is no reasonable expectation of privacy in abandoned property; consequentially, one cannot seek suppression of evidence obtained from abandoned items.").  Furthermore, a defendant's failure to assert ownership over the seized item or request it back after seizure also diminishes his possessory interest. *See United States v. Horsley*, No. 6:19-CR-00013, 2022 WL 827254, at *2 (W.D. Va. Mar. 18, 2022) (noting that the defendant had a weak possessory interest in his phone because he never asked for it back from law

enforcement); *Skinner*, 2021 WL 1725543, at *25 (same); *Dorsey*, 2019 WL 3804113, at *6 (same).

B. Analysis

As a threshold matter, the parties dispute what the relevant time period is with regard to law enforcement's delay in obtaining the challenged search warrant. Defendant argues that the relevant time period is the 30 days between when the puffer jacket was recovered and when the warrant for the phone was secured. Dkt. 50 at 1, 5. The government, on the other hand, contends that the period in question is six days: the time between when the phone was discovered on April 19, 2023 and when the warrant was secured on April 25, 2023. Dkt. 58 at 6-8. Notably, the government cites no case law in support of the proposition that it is law enforcement's discovery of the seized item that starts the clock. Instead, the government merely attempts to justify its belated discovery of the phone by explaining that law enforcement officers were initially focused on analyzing forensics from the scene of the shooting and thus only reached the jacket later on in their examination of the evidence. *Id.* at 6-7. But such a consideration goes simply to whether law enforcement officers diligently pursued their investigation. As such, this inquiry is assessed as part of the *Pratt* balancing test. Regardless, the Court need not decide this issue because the seizure here was reasonable even under the longer 30-day time period.

A balancing of the government's interest in the 30-day extended seizure against Defendant's possessory interest in his phone weighs in favor of the government. To begin with, it cannot be suggested that law enforcement did not retain a strong interest in the phone, and "overriding circumstances" excused the delay. *Pratt*, 915 F.3d at 272. Defendant's phone was found inside the puffer jacket, along with over $500 in cash and a plastic bag containing fentanyl pills. Dkt. 50 at 2-3. As detailed in Detective Walsh-Steines' affidavit in support of the iPhone

Search Warrant, the relevance of the phone to the drug discovery is apparent. Dkt. 55 at 8; *see also Skinner*, 2021 WL 1725543, at *24 (finding that the government had a strong interest in the seizure of the defendant's cell phones where law enforcement had a substantial basis for concluding that evidence of the defendant's child pornography offense would be found on his cell phones). Specifically, Detective Walsh-Steines' affidavit outlined the importance of cell phones to drug traffickers generally and also emphasized the likelihood of photos of drug products, messages regarding drug deals, and other evidence of illegal drug activity being found on Defendant's phone. Dkt. 55 at 8.

Furthermore, the government provides a convincing explanation for obtaining the iPhone Search Warrant thirty days after seizure. As the government explains, on March 26, 2023, PWCPD officers were focused on the scene of the shooting, during which a victim had been struck by a stray bullet in her apartment while watching television. Dkt. 58 at 7. Officer Gracia, who collected the puffer jacket at the scene of the pursuit, did not fully search the jacket, as his training instructed that such tasks were reserved for the forensics team. *Id.* And as Officer Dean, the head of the forensics team handling the case, testified at the November 29, 2023 motions hearing, from March 26 onward, he was prioritizing the forensics from the active shooting scene. This involved processing evidence at the scene of the shooting, evidence retrieved from the Mercedes, and fingerprint analysis on the items recovered. Only on April 19, 2023 did Officer Dean turn to the jacket as part of his work and subsequently discover the presence of both the phone and the drugs in this case. Officer Dean then informed Detective Walsh-Steines of the presence of both items that same day. And as Detective Walsh-Steines testified at the motions hearing, he immediately began the process of drafting an affidavit in order to obtain a warrant to search the phone. Thereafter, on April 25, 2023, only six days later,

law enforcement was able to secure the iPhone Search Warrant.  Dkt. 58 at 3-4.  The Court finds that, given capacity demands on law enforcement's time, it was reasonable that officers only discovered the presence of the phone in the puffer jacket after higher priority evidence was processed by the forensics team.  *See Christie*, 717 F.3d at 1164 (finding that law enforcement's five-month seizure of the defendant's computer was reasonable, in part, because the delay in securing a warrant was due to law enforcement attending to higher priorities).  Law enforcement officers focusing their efforts on certain aspects of the investigation over others, when combined with the diligence with which the officers pursued a warrant once the phone was discovered (obtaining the warrant only six days after discovering the phone), excuses the delay in securing the warrant, at least to some extent.

Meanwhile, it is unlikely that Defendant can claim any possessory interest at all in his phone, and even if he can, any such interest has been severely diminished.  As an initial matter, Defendant appears to have abandoned his jacket, which contained his iPhone, thus eliminating his possessory interest in the phone.  Critically, a defendant "who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property."  *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995).  In evaluating whether Defendant abandoned his phone, this Court finds *United States v. Small*, 944 F.3d 490 (4th Cir. 2019) instructive.  There, the defendant was attempting to flee from law enforcement in a car and eventually drove through a fence surrounding the National Security Agency.  *Small*, 944 F.3d at 495.  As officers were initiating a manhunt at the scene, they found the discarded car and several personal items discarded about, including a bloody shirt, a hat, and eventually a cell phone a short distance away from the hat.  *Id.* at 503.  The defendant challenged certain warrantless searches performed by law enforcement

9

on the phone, but the district court ruled that no warrants were required because the defendant abandoned his phone. *Id.* at 498. The Fourth Circuit upheld the district court's reliance on the abandonment theory in finding that the search withstood constitutional muster. In so holding, the Fourth Circuit stressed that "shirts do not accidentally fall off their wearers" and noted that the phone was found a short distance away, suggesting that the phone was also intentionally discarded. *Id.* at 503.

Similarly, in the instant case, Defendant fled from a vehicle that was trying to elude law enforcement. Dkt. 50 at 2. During the foot pursuit, as the body camera footage clearly indicates, Defendant actively discarded the puffer jacket he was wearing, which was later found to contain fentanyl pills, over $500 in cash, and a black iPhone. *Id.* at 2-3. The implication here is significant and the same one drawn in *Small*: Defendant was attempting to get away from law enforcement and did not want to be linked to the pills nor the information contained in the iPhone. By discarding the phone in an open residential area, "[Defendant] ran the risk that complete and total strangers would come upon it," thus relinquishing his privacy expectations in it. *Small*, 944 F.3d at 504.

In an effort to avoid this conclusion, Defendant claims that he did not know that law enforcement had his phone in their possession until May 8, 2023, the date the warrant to search the phone was served on him, and thus could not have voluntarily abandoned his phone. Dkt. 50 at 8-9.[1] For this argument to be persuasive, however, the Court would have to believe that Defendant did not know where on his person his phone was while officers were pursuing him on

---

[1] At the November 29, 2023 motions hearing, Defendant alternatively attempted to distinguish the instant case from *United States v. Small*, 944 F.3d 490 (4th Cir. 2019) by arguing that, unlike the defendant's phone in that case, his phone was locked. That argument fails,

10

March 26, 2023.  But such a theory defies the logic of modern life—as the Supreme Court noted in *Riley v. California*, cell phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an *important feature of human anatomy*."  *Riley v. California*, 573 U.S. 373, 385 (2014) (emphasis added).  The Court is not required to ignore common sense and thus recognizes that Defendant likely abandoned his phone by discarding his jacket while fleeing from law enforcement.  *See United States v. Green*, 981 F.3d 945, 956 (11th Cir. 2020) (taking "an objective, common-sense approach to assessing abandonment").

Even if Defendant did not technically abandon his phone when he discarded his jacket, Defendant's failure to seek the return of his phone from law enforcement supports a finding that his possessory interest in the phone was greatly diminished.  Defendant admits that he was not detained between April 6, 2023 and April 25, 2023.  Dkt. 50 at 3.  During this period, he could have, but did not, petition for the return of his phone.  Defendant's justification for his inaction is unavailing.  His primary defense is that he could not ask for his phone back because he was unaware that it was in the jacket that he had discarded during the chase and he did not know that law enforcement had secured his phone.  But Defendant does not explain where he thought his phone could have been if not in police custody during the month-long period when he did not have it in his possession.  And Defendant's argument has even less credibility when considered against the much more logical alternative that he knew his phone was in the jacket, but asking for it back would positively identify him as the individual who discarded the gun and the jacket with the drugs in it.  *See Horsley*, 2022 WL 827254, at *2 ("Of course, Horsley was not required to

---

however, because Defendant still risked the possibility that passerby could come upon his phone and hack into it.

tell the agents the phones were his . . . He may well have wanted to maintain deniability or not risk incriminating himself by asserting any possessory interest in the seized phones to law enforcement. But, while it was his right to stay silent, Horsley cannot now have it both ways and claim after the fact that he had long been deprived of possessory rights in phones in which he never asserted any interest."). The Court thus finds that because Defendant failed to assert his possessory interest in his phone after his release from custody, his interest in the phone was severely diminished and he cannot overcome law enforcement's interest in it. Accordingly, a balancing of the parties' respective interests indicates that the government's delay in obtaining a warrant was reasonable, and suppression is therefore not warranted based on the extended delay.

Regardless, even if the delay here were unreasonable under the Fourth Amendment, the Court finds that suppression pursuant to the exclusionary rule is not an appropriate remedy given the circumstances. The Supreme Court "ha[s] repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 140–41 (2009). Rather, the Court has instructed that "[t]o the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against its substantial costs." *Id.* at 141. As such, "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis v. United States*, 564 U.S. 229, 238 (2011) (quoting *Herring*, 555 U.S. at 143). Conversely, in cases where "police act with an objectively reasonable good-faith belief that their conduct as lawful," or "when their conduct involves only simple, isolated negligence," exclusion is not warranted. *Id.* (internal quotations omitted).

Here, the Court finds that the officers' 30-day delay in securing a search warrant for Defendant's phone, even if running afoul of the Fourth Amendment, does not require suppression because the delay was buttressed by good faith. The vast majority of the delay period in the instant case resulted from law enforcement officers being unaware that they possessed Defendant's phone. And as discussed *supra*, law enforcement's belated discovery of the phone was merely due to the officers pursuing "other and higher law enforcement priorities"; namely, processing the evidence from the scene of the active shooting. *Christie*, 717 F.3d at 1164. Where, as here, law enforcement officers acted with no more than "simple . . . negligence" in failing to discover Defendant's phone earlier, "deterrence [] loses much of its force." *Davis*, 564 U.S. at 238. Accordingly, even if the delayed acquisition of the search warrant produced a constitutional violation, such a violation does not warrant exclusion of the evidence flowing from the search of Defendant's phone.

### III. DEFENDANT'S SECOND MOTION TO SUPPRESS

Defendant next asks this Court to suppress all evidence flowing from law enforcement's search of his phone, contending that the warrant authorizing the search was fatally overbroad, in violation of the Fourth Amendment's particularity requirement. Dkt. 52 at 1. The Court finds that the warrant at issue here did not lack particularity, and again, even if the warrant were overbroad, suppression is not an appropriate remedy.

#### A. Legal Standard

The Warrant Clause of the Fourth Amendment commands that a warrant only issue upon probable cause and that a warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Unlike the probable cause requirement, which concerns the showing made by an officer seeking a search warrant, the

particularity requirement is focused as well on the officer executing a warrant, and ensures that the search 'will be carefully tailored to its justifications' rather than becoming a 'wide ranging exploratory search[ ]' of the kind the 'Framers intended to prohibit.'" *United States v. Blakeney*, 949 F.3d 851, 861 (4th Cir. 2020) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). "As always, 'the ultimate touchstone of the Fourth Amendment is reasonableness.'" *United States v. Lyles*, 910 F.3d 787, 791 (4th Cir. 2018) (quoting *Fernandez v. California*, 571 U.S. 292, 298 (2014)). Accordingly, the Fourth Circuit has explained that "[w]hen it comes to particularity," search warrants should be "construe[d] . . . in a 'commonsense and realistic' manner, avoiding a 'hypertechnical' reading of their terms." *Blakeney*, 949 F.3d at 862 (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010)). "So long as the warrant describes the items to be seized with enough specificity that the executing officer is able to distinguish between those items which are to be seized and those that are not . . . the particularity standard is met." *Id.*

### B. Analysis

As a threshold matter, this Court recognizes, for the same reasons discussed *supra*, that Defendant appears to have abandoned his phone, thus relinquishing his reasonable expectation of privacy in it. As a result, Defendant is likely precluded in the first instance from seeking to suppress evidence obtained pursuant to the search of that phone. *See Leshuk*, 65 F.3d at 1111 (explaining that a defendant "who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property").

In any event, the Court finds that the search warrant challenged here satisfies the Fourth Amendment's particularity requirement. The crux of Defendant's argument is that the iPhone Search Warrant amounted to nothing more than an impermissible general warrant because it

permitted an exploratory rummaging through the entire contents of his phone. Dkt. 52 at 2. Defendant suggests that the warrant should have included some sort of workable mechanism to cabin off data irrelevant to the crimes at issue. *Id.* at 3. Instead, Defendant asserts, the warrant was unconstitutionally broad in that it granted law enforcement unfettered authority to search and seize data stored on his device without sufficient limitation. *Id.* In support of his position, Defendant directs the Court's attention to several state court decisions condemning search warrants that authorized review of the entire contents of a cell phone. Dkt. 52 at 8, 10-14 (relying primarily on *Eugene Burns v. United States*, 235 A.3d 758 (D.C. 2020) and *United States v. Winn*, 79 F. Supp. 3rd 904, 909 (S.D. Ill. 2015) and citing others).

Importantly, however, these state court decisions run directly counter to a line of cases from the Fourth Circuit wherein the court expressly held that investigators with a warrant to search a computer may review every file on the electronic device to determine whether the file can be seized pursuant to the warrant. *United States v. Cobb*, 970 F.3d 319, 328-29 (4th Cir. 2020); *United States v. Williams*, 592 F.3d 511, 521-22 (4th Cir. 2010).[2] The defendants in *Cobb* and *Williams* made arguments similar to the one that Defendant advances here. In *Cobb*, for instance, the defendant argued that a warrant to search his computer was invalid because it did not specify the "'types of files sought, the location of the files, the timeframe [and] the relationship between the files and the information' that the police had" about the crime under investigation. 970 F.3d at 328. Likewise, in *Williams*, the defendant argued that a warrant to search his computers and digital media was invalid because it was not limited to reviewing "only

---

[2] As other federal courts have recognized, "[a] search of a cell phone is analogous to a search of a computer." *United States v. Bolling*, No. CR 2:21-00087, 2023 WL 5616188, at *6 (S.D.W. Va. Aug. 30, 2023) (citing *Riley v. California*, 573 U.S. 373, 393 (2014) and *United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018)).

those files in his computer that related to the" specific offenses under investigation. 592 F.3d at 518. Both the *Cobb* and *Williams* courts rejected these arguments with the same reasoning: a validly issued warrant "impliedly authorize[s] officers to open each file on the computer and view its contents, at least cursorily, to determine whether the file fell within the scope of the warrant's authorization—*i.e.*, whether it related to the designated [crimes under investigation]." 970 F.3d at 329 (quoting *Williams*, 592 F.3d at 521-22); 592 F.3d at 521-22. The warrant in the instant case did just that: it permitted a complete review of the black Apple iPhone's data to look for information related to the specific crimes under investigation, which were specifically listed in the search warrant by both name and Virginia Code Section. Dkt. 55 at 1, 3.

The Court thus finds that it was enough that the iPhone Search Warrant "confine[d] the executing [officers'] discretion by allowing them to seize only evidence of . . . particular crime[s]." *Cobb*, 970 F.3d at 328 (quoting *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986)); *see also United States v. Sueiro*, 59 F.4th 132, 139 (4th Cir. 2023) ("[W]hen a warrant states a charged offense, such reference to the crime effectively narrows the description of the items to be seized." (citing *Blakeney*, 949 F.3d at 863 n.2)). The references to particular crimes in the challenged search warrant here "adequately distinguished between the materials to be searched and seized and those which were to be left undisturbed by law enforcement." *Skinner*, 2021 WL 1725543, at *11.

The Fourth Amendment simply does not demand more particularity. As another district court within this Circuit has noted, officers cannot be expected "to predict the items of evidence that an electronic search will uncover or predict where on the computer the evidence will be found." *United States v. Bolling*, No. CR 2:21-00087, 2023 WL 5616188, at *6 (S.D.W. Va. Aug. 30, 2023) (citing *Cobb*, 970 F.3d at 329). After all, the owner of a cell phone who is

16

engaged in criminal activity "will not label his files to indicate their criminality," *Williams*, 592 F.3d at 522, nor will he "advertise where [he] keep[s] evidence" of those crimes, *United States v. Bishop*, 910 F.3d 335, 336 (7th Cir. 2018). Accordingly, because the iPhone Search Warrant circumscribed the search of Defendant's phone to the identified offenses, the Court concludes that the Warrant passes constitutional muster.

Finally, even if the warrant was overbroad and lacked particularity, suppression of the evidence obtained from the search of Defendant's phone would not be appropriate. In *United States v. Leon*, 468 U.S. 897, 922 (1984), the Supreme Court explained that suppression is not warranted where officers rely in good faith on an objectively reasonable search warrant issued by a neutral and detached judge. That is because "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921. The objective standard is measured by "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922, n.23. The *Leon* Court observed that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918. The Court in *Leon* identified only four circumstances in which exclusion of evidence seized pursuant to a warrant is appropriate: (1) where the issuing magistrate was misled by the inclusion of knowing or recklessly false information; (2) where the issuing magistrate wholly abandoned the "detached and neutral judicial role"; (3) where the warrant is facially deficient as to its description of the place to be searched or the things to be seized; or (4) where the affidavit upon which the warrant is based is "so lacking in indicia of probable cause that no reasonable officer could rely on it in good faith." *Id.* at 923 (internal quotations and citations omitted).

None of these four circumstances apply to the iPhone Search Warrant at issue in the case at bar. First, Defendant does not claim that the Warrant contained any knowingly or recklessly false information or omissions. Second, Defendant also does not assert that the magistrate judge who authorized the Warrant abandoned his detached and neutral judicial role. Third, the iPhone Search Warrant clearly and particularly described the place to be searched (the black Apple iPhone) and the things to be seized (evidence related to the crimes under investigation, which were listed on the face of the Warrant). Dkt 55 at 1, 3; *see also Skinner*, 2021 WL 1725543, at *21 (finding that the warrants at issue were not facially deficient because they sufficiently identified the places to be searched as the defendant's two cell phones). Fourth, Detective Walsh-Steines' affidavit made a comprehensive showing of probable cause to justify issuance of the iPhone Search Warrant and described in detail the crimes being investigated. Dkt. 55 at 7-9. Accordingly, because law enforcement's reliance on the iPhone Search Warrant was reasonable, suppression of the evidence seized pursuant to the Warrant would have little deterrent effect and is therefore not appropriate.

## IV. CONCLUSION

This matter was exceptionally well-argued by counsel. For the foregoing reasons, it is hereby ORDERED that Defendant's First Motion to Suppress (Dkt. 50) is DENIED and Defendant's Second Motion to Suppress (Dkt. 52) is DENIED.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
December 1, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge